# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Kodak Seren Cellphone )
Model: Unknown )
Seized as FP& F: 2024255200015601 Item: 0002 )

Case No. 24-mj-08886-LR

**FILED**
Oct 04 2024
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY  s/ carolinalopez  DEPUTY

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the   Southern   District of   California  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Fernando Quiroz*
Applicant's signature

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
  telephone   *(specify reliable electronic means).*

Date: 10/04/2024

*LR*
Judge's signature

City and state: El Centro, California

HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

A-2:    Kodak Seren Cellphone
Model: D50L
Seized as FP& F: 2024255200015601 Item: 002
Seized from Juvenal Ramiro ESCOBEDO-Gutierrez
(Target Device #2)



The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-2 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of September 1, 2024, up to and including October 1, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

A-1:     Blue Motorola Cellphone
         Model: Unknown
         Seized as FP& F: 2024255200015601 Item: 001
         Seized from Jorge Gabriel AMBRIZ
         (Target Device #1)

A-2:     Kodak Seren Cellphone
         Model: D50L
         Seized as FP& F: 2024255200015601 Item: 002
         Seized from Juvenal Ramiro ESCOBEDO-Gutierrez
         (Target Device #2)

as further described in Attachments A-1 to A-2, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Jorge Gabriel AMBRIZ (AMBRIZ), for transportation of illegal alien Juvenal Ramiro ESCOBEDO-Gutierrez (ESCOBEDO) (the "Material Witness") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from AMBRIZ and the Material Witness on or about September 30, 2024, incident to the arrest of AMBRIZ and the Material Witness. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector

Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

## EXPERIENCE AND TRAINING

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8, 18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of

2

California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text

3

messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

10. On September 30, 2024, Border Patrol Agents-Intelligence assigned to the El Centro Sector Intelligence Anti-Smuggling Unit Group#2 (ASU) were conducting surveillance in Calexico, California. The ASU wears plain clothes and drives unmarked Service vehicles to blend in with the general public. ASU conducts surveillance and investigations on known smugglers and smuggling transportation cells operating in the Imperial Valley.

11. On this date, at approximately 9:40 p.m., Border Patrol Agent-Intelligence H. Torres observed multiple individuals approach the United States/Mexico International Boundary Fence (IBF) from the Mexico side south of 1st Street near Heber Avenue. BPA-I H. Torres watched as some of the individuals crouched down near the bottom of the IBF while two of the individuals set ladders up against the fence.

12. At approximately 9:45 p.m., BPA-I H. Torres, who was positioned south of 1st Street, watched as a male, later identified as Juvenal Ramiro ESCOBEDO-Gutierrez (ESCOBEDO) climbed to the top of the IBF from the Mexico side and scaled down the IBF into the United States. Escobedo, who was wearing a long blue sleeve shirt and a white hat, quickly ran away from the IBF across 1st Street and continued running north on Heffernan Avenue towards 2nd Street. As ESCOBEDO reached 2nd Street, both Supervisory Border Patrol Agent (SBPA) A. Mills and BPA-I L. Heipt observed ESCOBEDO briefly run eastbound before hiding in the doorway of a residence in 2nd Street, Calexico, California.

13. As ESCOBEDO entered the doorway, ASU Agents positioned themselves in the area in anticipation that ESCOBEDO would emerge from hiding and be greeted by a foot guide or be telephonically guided to a foot guide who was in the area. After approximately 15 minutes, BPA-I L. Heipt watched as ESCOBEDO walked out of the doorway and continued walking northbound on Heffernan Avenue. It should be noted that ESCOBEDO was now wearing a dark colored t-shirt and no hat. As ESCOBEDO began walking westbound on 3rd Street, BPA-I J. Bourque initiated mobile surveillance on

ESCOBEDO while BPA-I L. Heipt walked to the doorway and retrieved ESCOBEDO's long blue sleeve shirt and white hat.

14. While following ESCOBEDO, ASU Agents observed him nervously looking over his shoulder and looking up at street signs while on the phone. ASU Agents kept constant visual on ESCOBEDO as he walked westbound on 3rd Street, entered the Fillco Gas Station parking lot, walked towards the alley on the e sat side of the Fillco Gas Station, and climb on top of a metal Conex box. ASU Agents observed that ESCOBEDO was on his cell phone and acting in manner as if he was being instructed on exactly where to walk and what to do. After ESCOBEDO laid down on top of the Conex box, ASU Agents again strategically parked their unmarked Service vehicles in and around the area in anticipation that ESCOBEDO would be contacted by a foot guide.

15. While observing the northside of the alley, BPA-I H. Torres observed Jorge Gabriel AMBRIZ (AMBRIZ) walk into the Pep Boys parking lot, which is located north of the alley where ESCOBEDO was hiding. AMBRIZ is a known alien smuggler and foot guide that has been apprehended by ASU Agents on two previous occasions. BPA-I H. Torres watched as AMBRIZ nervously walked by and looked inside the vehicles in the immediate area, as if he was making sure no one was in the vehicles watching him. After looking in vehicles, BPA-I H. Torres watched as AMBRIZ continued looking southbound while standing on the north side of 4th Street.

16. While AMBRIZ stood on the northeast corner of 4th Street and Imperial Avenue, BPA-I J. Bourque observed ESCOBEDO walk out of the alley from behind Church's Chicken towards Imperial Avenue. Once at Imperial Avenue, ESCOBEDO walked across 4th Street towards AMBRIZ, who appeared to be waiting for him. As ESCOBEDO approached AMBRIZ on the northside of 4th Street, ASU Agents observed both AMBRIZ and ESCOBEDO begin conversing and immediately continue walking northbound on Imperial Avenue together.

17. ASU Agents continued to watch AMBRIZ and ESCOBEDO as they walked next to each other while conversing. ASU Agents kept visual on AMBRIZ and

6

ESCOBEDO as they walked to the yard of residence in Giles Avenue. ASU Agents know from prior surveillance and investigations that this residence is where AMBRIZ resides.

18.     ASU Agents approached AMBRIZ and ESCOBEDO, who were both sitting outside, with Border Patrol markings and insignia fully visible. BPA-I L. Heipt approached AMBRIZ, who is a United States citizen, identified himself as a Border Patrol Agent and questioned AMBRIZ as to his involvement in alien smuggling. SBPA A. Mills identified himself as a Border Patrol Agent to ESCOBEDO and questioned ESCOBEDO as to his citizenship. ESCOBEDO freely admitted that he was a citizen of Mexico in the United States illegally. ESCOBDEDO admitted that he made illegal entry by climbing the border fence in an area other than through a designated Port of Entry.

19.     At approximately 10:38 p.m., AMBRIZ was placed under arrest for 8 USC 1324 Alien Smuggling and ESCOBEDO was placed under arrest for 8 USC 1325 Illegal Entry. AMBRIZ and ESCOBEDO were transported to the Calexico Border Patrol Station where their biographical data was entered and recorded.

20.     During a post-Miranda interview, principal AMBRIZ stated that he is a United States citizen, born in Los Angeles, California. AMBRIZ stated that he lives in Giles Avenue in Calexico. AMBRIZ stated that he was arrested for drugs before at the Port of Entry and that he is on probation for three years. AMBRIZ stated that he was arrested one time for alien smuggling. AMBRIZ acknowledged that he was arrested for alien smuggling today. AMBRIZ stated that today someone he does not know very well called him and instructed him to get an illegal at the 7 Eleven. AMBRIZ stated he walked with the illegal alien to his house in Giles Avenue. AMBRIZ stated he knows alien smuggling is illegal. AMBRIZ stated he did not know how much he was going to be paid for getting the illegal alien because they change the amount from $100.00 to $200.00. AMBRIZ stated that some else was going to pick up the illegal alien later. AMBRIZ stated he has not worked for three or four months and that he owes child support for two children. AMBRIZ stated he was desperate. AMBRIZ stated he was not going to take the illegal alien into the house because his mother was there.

21.     During a post-Miranda interview, Material witness ESCOBEDO stated that he was born in Mexicali, Mexico, and currently resides in Mexicali. ESCOBEDO stated that he is a citizen of Mexico ESCOBEDO stated that he does not have any legal documents allowing him to live, work or remain in the United States legally. ESCOBEDO stated that he made arrangements with an "Unknown Smuggler" and agreed to pay around $8,000 United States dollars to be illegally smuggled to Los Angeles, California. ESCOBEDO stated he climbed over the border fence and go confused a little on where to go. ESCOBEDO stated he met a male at Pep Boys and walked with him for a few blocks until he got to a house. ESCOBEDO stated he was on the outside of the patio of the house and then was arrested.

22.     During a search incident to arrest of AMBRIZ and the Material Witness, two cellphones were found: a blue Motorola cellphone (Target Device #1) was found by BPA-I L. Heipt on AMBRIZ's person and AMBRIZ claimed ownership of this cellphone. A Kodak Seran cellphone (Target Device #2) was found by SBPA A. Mills on ESCOBEDO's person and ESCOBEDO claimed ownership of this cellphone. All cellphones were seized as evidence.

23.     I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on September 1, 2024, up to and including October 1, 2024, the day after the arrest of AMBRIZ and the Material Witness.

## METHODOLOGY

24.     It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be

8

simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network.  Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

25. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

26. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

9

## CONCLUSION

27. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that AMBRIZ and the Material Witness used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by AMBRIZ, the Material Witness, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Fernando Quiroz*
Fernando Quiroz Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 4th day of October, 2024.

_____  11:25 p.m._____
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

10

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**         Blue Motorola Cellphone
               Model: Unknown
               Seized as FP& F: 2024255200015601 Item: 001
               Seized from Jorge Gabriel AMBRIZ
               **(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

A-2:   Kodak Seren Cellphone
       Model: D50L
       Seized as FP& F: 2024255200015601 Item: 002
       Seized from Juvenal Ramiro ESCOBEDO-Gutierrez
       (Target Device #2)



The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-2 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of September 1, 2024, up to and including October 1, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.